UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 23, 2022

LETTER TO ALL COUNSEL OF RECORD

Re:   *Roshelle S.-B. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 21-2842-BAH

Dear Counsel:

On November 5, 2021, Plaintiff Roshelle S.-B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 4.[1] This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case, ECF 8, the parties' cross-motions for summary judgment, ECFs 11 and 13. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on June 18, 2019, alleging a disability onset of March 3, 2009. Tr. 104.[2] Plaintiff's claims was denied initially and on reconsideration. Tr. 124. On May 18, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 32–78. Following the hearing, on July 29, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 12–25. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Though Plaintiff's case was initiated, and the filing fee paid, on November 5, 2021, ECF 1-3, the Complaint was not filed until December 7, 2021. ECF 4.

[2] The transcript reflects that Plaintiff also filed a Title XVI application for Supplemental Security Income ("SSI") benefits, but this request was denied because plaintiff had "too much income to be eligible." Tr. 107. This issue is not before the Court for review.

[3] 42 U.S.C. §§ 301 et seq.

*Roshelle S.-B. v. Kijakazi*
Civil No. 21-2842-BAH
September 23, 2022
Page 2

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of March 3, 2009[,] through her date last insured of September 30, 2014." Tr. 14.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "status-post left ankle fracture, status-post left wrist sprain, left knee pain, left shoulder pain, obstructive sleep apnea and obesity (20 CFR 404.1520(c))." Tr. 14.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "anemia, uterine fibroids/endometriosis, hepatomegaly with hepatic steatosis, and migraines." Tr. 15.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 16.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except after every 15-20 minutes of standing or walking, she needed to alternate to sitting for about 5 minutes. She could operate foot controls with the left foot no more than frequently. She could operate hand controls with the dominant left hand no more than frequently. She could no more than occasionally reach overhead with the dominant arm. She could no more than frequently handle and finger items with the dominant hand. She could no more than occasionally climb ramps or stairs. She could never climb ladders, ropes, or scaffolds. She could occasionally stoop and crouch but never kneel or crawl.

Tr. 17.  The ALJ determined that Plaintiff was not able to perform past relevant work "as a Teaching Assistant (DOT[4] 099.327-010, light exertional level as generally performed but actually

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles.  The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .* , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the*

performed at medium, SVP-6)" but could perform other jobs that existed in significant numbers in the national economy. Tr. 23. Specifically, the ALJ determined that Plaintiff could have performed the requirements of an "Envelope Addresser (DOT 209.587-010)," a "Call-Out Operator (DOT 237.367-014)," and a "Document Preparer (DOT 249.587-018)." Tr. 24. Therefore, the ALJ concluded that Plaintiff was not disabled between March 3, 2009, through September 30, 2014. Tr. 24.

### III. LEGAL STANDARD

A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x. 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

### IV. ANALYSIS

Plaintiff raises one general argument on appeal, namely that the ALJ erred in assessing Plaintiff's RFC. ECF 11-1, at 3. More specifically, Plaintiff contends that the ALJ erroneously: (1) failed to provide a narrative discussion setting forth how the evidence supported each [RFC] conclusion" and (2) "failed to perform a function-by-function assessment of the Plaintiff's work-related abilities, and instead simply concluded that the Plaintiff was capable of performing a range of sedentary work." *Id.* at 6–14. Defendant counters that "the ALJ sufficiently explained the rationale for her RFC finding in a detailed narrative statement[.]" ECF 13-1, at 6. Defendant also contends that Plaintiff has failed to show any harm stemming from the ALJ's alleged error. *Id.* As to Plaintiff's second argument, Defendant responds that the ALJ "expressly found that [Plaintiff] could perform sedentary work" after "making findings about [Plaintiff's] ability to sit, walk, lift, and carry." *Id.* at 11–12.

A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, an ALJ is required to "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). As Plaintiff notes, pursuant to Social Security Ruling 96-8p, an ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b) including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . . [that] may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(b). "Only after such a function-by-function analysis may an ALJ express

---

*Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

RFC in terms of the exertional levels of work" of which he believes the claimant to be capable. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Monroe*, 826 F.3d at 179). As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Id.* (alteration in original) (citing *Thomas*, 916 F.3d at 311). Thus, ALJs must both identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Here, the ALJ made several conclusions as to Plaintiff's ability to stand or walk, operate foot and hand controls, reach overhead, and manipulate items with the fingers on Plaintiff's dominant hand. Tr. 17. Plaintiff argues that each conclusion is unsupported by "specific medical facts and nonmedical evidence." ECF 11-1, at 6. I disagree. For example, Plaintiff takes issue with the ALJ's finding Plaintiff's employment "required the ability to alternate to siting for five minutes after every 15 to 20 minutes of standing or walking." ECF 11-1, at 6. However, this finding appears to closely track that of Plaintiff's own orthopedist, who noted that by November of 2009, Plaintiff "walked with only a little antalgia and unsteadiness." Tr. 20 (citing Ex. 8F at 10).[5] In January 2010, Plaintiff was "tolerating the treadmill for several minutes" and can "tolerate being up long enough to do her shopping independently." Tr. 661. These records are extensively cited in the RFC analysis. Tr. at 20–21. To the extent Plaintiff contends that the ALJ should have adopted a specific RFC endorsed by Plaintiff's treating orthopedist, "it is also clear that the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner." *Jones v. Saul*, No. 2:20-CV-00437, 2021 WL 1015821, at *14 (S.D.W. Va. Feb. 23, 2021), report and recommendation adopted, No. 2:20-CV-00437, 2021 WL 1015896 (S.D. W. Va. Mar. 16, 2021) (citing 20 C.F.R. § 404.1546(c)); *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC.")). As such, I do not sustain Plaintiff's argument that the ALJ "failed to explain the genesis" (ECF 11-1, at 6) of the RFC limitation as it pertained to alternating between sitting and standing.

Plaintiff cites to *Candace W. v. Kijakazi* as an analogous case where remand was ordered due to an ALJ's insufficient explanation of a "sit/stand" option. ECF 11-1, at 8–9 (citing *Candace W. v. Kijakazi*, No. TJS-20-3344, 2022 WL 521967, at *1 (D. Md. Feb. 22, 2022)). There, the ALJ determined that the claimant, Candace W., could "sit or stand at 25 minute intervals, for no more than one to three minutes at a time." *Candace W.*, 2022 WL 521967, at *2. Candace W. argued that the ALJ invented this sit/stand option out of whole cloth in an effort to generally address a claimant's own testimony that she "was able to 'sit for approximately 25 to 30 minutes' and then she would 'have to stand for another almost equal time[.]'" *Id.* at *2. Finding "no evidence that Candace W.'s shifting of positions for one to three minutes would allow her to continue working from one position for twenty-five minutes," remand was ordered. *Id.*

Here, the sit/stand option in the RFC rests on somewhat firmer ground. The ALJ found

---

[5] The record cited by the ALJ notes that Plaintiff was, in late November of 2009, "walking better than [Plaintiff's orthopedist had] ever seen her [walk]." Tr. 659.

that "after every 15-20 minutes of standing or walking, [Plaintiff] needed to alternate to sitting for about 5 minutes." Tr. 17.  Though the ALJ certainly could have been clearer in articulating the support for this precise limitation, a review of the record reveals that it strikes the proper balance between Plaintiff's hearing testimony that Plaintiff, at least at one point, "wasn't able to walk," Tr. 56, and Plaintiff's documented history of improved mobility that progressed from "walking with some authority, accepting weight with a good stride length and good cadence" in August 2009, Tr. 656 to walking with "a steady gait" by June 2011, Tr. 446.  This limitation also reflects that by September 2014, near the date Plaintiff was last insured, Plaintiff reported that she was able to "get around without using [a] cane." Tr. 662.  It also incorporates an evaluation performed in January 2010, where Plaintiff's doctor noted that Plaintiff's walking was limited to "15-20 minutes" and required a job that involved mainly "sitting" or "limited standing/walking." Tr. 22 (citing Ex. 1F).  Though the ALJ did not find this opinion persuasive, the ALJ nonetheless crafted an RFC limitation that came quite close to mirroring the recommendations found therein.  Accordingly, unlike the sit/stand option in *Candace W.*, I find substantial evidence is present to support the ALJ's limitation here.

I similarly find that the ALJ sufficiently explained the evidence that supported each of the additional RFC limitations Plaintiff challenges.  As to the use of foot controls, the ALJ cited repeatedly to records summarizing Plaintiff's ankle and lower leg limitations.  Tr. 19–21 (citing Exs. 32F and 8F).  In the same vein, the ALJ cited to medical evaluations and imaging that justified the limitations on the use of Plaintiff's left hand and fingers as well as Plaintiff's ability to reach overhead.  Tr. 17–21.  Indeed, the ALJ recounted each of Plaintiff's visits with several physicians which generally reflected steady improvement in Plaintiff's condition including "full range of motion" in both her left knee and wrist.  Tr. 20 (citing Ex. 8F).  In sum, the ALJ adequately explained the connection between the RFC limitations and the existing evidence sufficient for the Court to conclude that the ALJ's decision is supported by substantial evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Even if the Court did find error in the formulation of the RFC, remand would not necessarily follow.  The Fourth Circuit has held that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Remand is only required "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177).  Plaintiff has failed to articulate how Plaintiff's RFC may have changed had the ALJ performed, as Plaintiff alleges the ALJ should have, a more detailed function-by-function RFC analysis.  Accordingly, any failure by the ALJ to perform a function-by-function analysis, where, as here, there is no evidence that more robust analysis would lead to a different result, constitutes harmless error.  *Mascio*, 780 F.3d at 636; *see also Turner v. Colvin*, No. 1:13CV00761, 2015 WL 502082, at *11 (M.D.N.C. Feb. 5, 2015), report and recommendation adopted, No. 1:13CV761, 2015 WL 12564210 (M.D.N.C. Mar. 6, 2015) ("Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in

the case and, thus, such harmless error does not warrant remand.").

Stated plainly, Plaintiff fails to suggest what limitations should have been included in the RFC that were not. Thus, it is unclear how the ALJ's alleged errors changed the outcome here. In fact, it appears that the ALJ found an RFC that was arguably *more* restrictive than the evidence may have called for by, for example, including a sit/stand option when the ALJ generally discredited the medical evidence that supported it. Plaintiff has not identified how Plaintiff's conditions limited Plaintiff's RFC to a greater extent than the ALJ found, thus I am constrained to find any alleged error was harmless.[6] *See Brown v. Astrue*, No. JKS–09–1792, 2011 WL 129006, at *2 (D. Md. Jan. 14, 2011) ("Having identified no evidence to suggest that his obesity caused greater limitations than the ALJ assigned, [Plaintiff] has shown no basis for remand.").

I also find that the ALJ's conclusion that Plaintiff can engage in "sedentary" work is supported by substantial evidence. As noted, the ALJ summarized all available evidence regarding Plaintiff's care throughout the relevant time period before concluding that Plaintiff is limited to "sedentary work with further limitations on the use of [Plaintiff's] left extremities and with postural restrictions." Tr. 23. This limitation to sedentary work was explicitly based on Plaintiff's own testimony as well as the opinion of Plaintiff's treating orthopedist and other medical professionals. Tr. 23. While Plaintiff is correct that the ALJ did not explicitly catalog each of the elements of sedentary work as found in 20 C.F.R. § 404.1567(a), the Court does not find this omission to require remand as it is clear from the record that the ALJ considered this definition[7] and that this finding is supported by substantial evidence.

Plaintiff is correct that the initial hypothetical question posed to the VE included a limitation of "light work." Tr. 74–75. However, as Plaintiff admits, the VE then suggested that the hypothetical be limited to "sedentary" jobs. Tr. 75. The ALJ honored the suggestion, amending the hypothetical to ask whether there are "jobs at the sedentary exertional level" that a hypothetical person with Plaintiff's limitations could perform. Tr. 75. Thus, I do not agree that the "limitation that the Plaintiff was limited to sedentary work was never included in the hypothetical questions presented to the vocation expert." ECF 11-1, at 12. Most significant, all the jobs listed by the VE were "sedentary jobs [that] comport to the hypothetical . . . ." Tr. 75. With the modification from "light" work to "sedentary" work, the hypothetical mirrored Plaintiff's

---

[6] It is important to note that Plaintiff carries the burden of showing how Plaintiff's conditions affected Plaintiff's ability to perform work-related functions. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry).

[7] I disagree with Plaintiff's claim that "as in *Dowling*[, 986 F.3d at 387], [the ALJ] did not cite to 20 C.F.R. § 404.1545" or "SSR 96-8p." ECF 11-1, at 11. The ALJ's decision explicitly cites to 20 C.F.R. § 404.1545. Tr. 14. The ALJ also noted that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)," Tr. 17, and also cites to the requirement in SSR 96-8p that the ALJ consider "all of the claimant's impairments" in making an RFC determination. Tr. 14.

limitations as noted in the RFC. As such, no error occurred. *See Megan H. v. Saul*, No. DLB-19-1320, 2020 WL 7338080, at *2 (D. Md. Dec. 14, 2020) (finding remand to be appropriate when the ALJ "fail[ed] to match his RFC determination and hypothetical to the VE[.]").[8]

My review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays*, 907 F.2d at 1456. Governed by that standard, I find that the ALJ's decision is supported by substantial evidence and that remand is unwarranted. Stated differently, after reviewing the ALJ's opinion, I am not "left to guess about how the ALJ arrived at [their] conclusions on [Plaintiff's] ability to perform relevant functions," thus remand is not necessary. *Mascio*, 780 F.3d at 637.

## V.  CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 11, is DENIED and Defendant's motion for summary judgment, ECF 13, is GRANTED. Plaintiff's alternative motion for remand, ECF 11 is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

[8] I also disagree with Plaintiff's claim the ALJ "made the identical error addressed by the Court in *Dowling*" by proclaiming that Plaintiff could perform "sedentary" work without the benefit of a function-by-function analysis. ECF 11-1, at 10. In *Dowling*, "the ALJ stated the claimant's 'RFC first and only *then* conclud[ed] that the limitations caused by [her] impairments were consistent with that RFC.'" 986 F.3d at 388 (citing *Thomas*, 916 F.3d at 312) (emphasis and alteration in *Thomas*). Here, the ALJ engaged in several pages of discussion about Plaintiff's symptoms, care, and improvement, focusing primarily on the assessment of Plaintiff's own orthopedist. Tr. 17-23. Only *after* that analysis did the ALJ conclude that Plaintiff was limited to "sedentary" work, thus distinguishing this case from *Dowling*. Tr. 23. ("In light of Dr. Jones's opinion and [Plaintiff's] fairly extreme testimony, I limit [Plaintiff] to sedentary work with further limitations . . . .").